We're prepared to hear argument in our first case, Professional Massage Training Center. And Mr. Martin, whenever you're ready. May it please the court, my name is Craig Martin. I represent ACCSC, the appellant in this appeal. I'll be doing the issues on the direct appeal, and then my partner, Mr. Scodro, who is seated at my right-hand side, will be doing the issues on the cross appeal. The district court erred by finding the ACCSC's denial of accreditation to PMTC to be arbitrary and unreasonable. So we will ask the court to reverse and enter judgment in favor of our client. The first thing that I'd like to cover is the administrative deference standard. With regard to the administrative deference, there is no dispute in this case that the arbitrary and unreasonable standard of review applies. And there's no dispute that it applies in this particular case. There's a reason for that standard. That standard is routed in the legislative and regulatory regime with regard to the Department of Education and its regulations. The purpose of that regime is to allow those with expertise and experience in the area to exercise their judgment and make decisions. In that regard, there were some things that troubled me about this proceeding. To what extent did the district court take it upon itself to just create a new record? That's exactly what the district court did, and that's one of the things that troubles us about the proceeding. And I'll address that point right now. It's a little bit further down in my outline, but I'll take it right now. The district court in this proceeding essentially did this. Classic administrative review, if you think about classic administrative review, you look at the administrative record and you ask yourself the question, is this arbitrary, is it capricious, is it unreasonable? But you do it based on the record that is before the administrative review body. In this case... That's the way the Fifth and Sixth Circuit proceeded, was it not? Correct. In the Cooley case and the Wilfrid case. Correct. And it is the classic way to proceed with regard to administrative review under ERISA when you're doing Chevron deference and so forth. Classic way to proceed. What the district court did here is the district court converted what I would say is a one-box administrative review into a 20-box trial record. So the district court actually created its own record and then reviewed its own record to come to its own conclusions. So the district court did not ask itself a question, did not ask the right question. The district court didn't ask the question of is this arbitrary and unreasonable as the record was presented to the administrative body. So we think the district court... Which is converted into a de novo. Essentially converted into a de novo and essentially asked exactly the wrong question. So the district court engaged in what I would call a reweighing of the evidence. And the easiest place to look at how the district court reweighed the evidence is look at the footnotes in the district court's opinion. The district court went in footnote one, two, and three. The district court makes commentary on the testimony of the witnesses at trial. And the district court basically interprets the evidence. The district court uses the term I read that like this. What troubles me about this, and I find some value in what you're saying, is that if we just go along with what the district court did, I'm concerned about turning the courts into accreditation agencies and into super accreditation agencies. And I'm not sure that that's what Congress intended at all. And I'm not sure that that's what the Fifth and Sixth Circuit did. So I'm afraid we'd be creating a conflict there. And what troubles me is looking down the road that we would say everything the district court did was fine. We're going to be stuck with reviewing every accreditation denial with some kind of de novo proceeding. And I don't know where all that ends. I don't know that we have the resources for it or the expertise for it. Your question is the entire point of administrative deference and the reason that you only review the record in asking the question of whether it's arbitrary and unreasonable. In fairness to the district court, I will point out one thing that I think is useful for you to understand with regard to our position. Let me explain it. Usually when you review something for due process review, you take a look at whether there was fairness and the opportunity to be heard. In this instance, I'll take the opportunity to be heard first. In this instance, the staff for two years dealt with the educational institution, PMTC. There was much back and forth. There was then a staff report that went to a group of directors of ACCSC, three, that made a decision to deny. That's not the staff, that's three directors. It then went to the whole commission. I think it's 15. Those people who are not the staff either, they work at other institutions including public and private institutions, made a decision to deny. It then went to an independent appeal, three people. One from a public institution, two from private institutions, not members of the board of ACCSC and not members of the staff. They denied accreditation. There was an opportunity to be heard. All the votes were unanimous? All the votes were unanimous. With regard to the district court, the district court seemed to, after it got into what I'd call classic federal court discovery, Rule 26, broad discovery, ESI and so forth, the district court got tied up on the concept of bias. And the district court, you can see it in its opinion, talks about whether there is staff bias. And the district court finds that there's staff bias in this case, right? It's in the opinion. The response to that is fairly straightforward. It's threefold. One is there is no bias at the decision-making body. If you take a look at the three people who make the final appellate decision at ACCSC, there's no bias with regard to them. There's no evidence of bias. There's no argument of bias and so forth. And they're not members of the staff. They're not even members of the board of ACCSC. Second, there's no bias that is linked to a decision in this case. There's no bias, there's no evidence of bias with regard to the decision, the final decision of the ACCSC. And the third point is this. The district court essentially comes to the conclusion that because he finds that there is staff bias after he conducts a trial and looks at the credibility of the witnesses and so forth, he finds that there is staff bias. And he then concludes that the decision made by others must be arbitrary and unreasonable. That conclusion, as a matter of law, we think is just wrong. And the reason we think it is wrong is this. Bias should mean things like conflict of interest, financial interest, a payoff financially, some kind of racial bias. It's not bias that is intrinsic to the process. It's not bias. In other words, if I came up and did a really bad argument, you may think, well, this guy, you know, I don't like this guy. I'm biased against him. Your clerks may write you a note and say I didn't like his tie. Well, the Techie decision makes somewhat that same point. Correct. At the Supreme Court level. Correct. And the reviewing all the different statements and the staff statements and the like, it seems that some members of the staff found their dealings with MS me to be very difficult and frustrating. I don't know what the source of that was, whether it was a personality difference or frustration at being unable to get information or what have you. But that's part of the process sometimes. I mean, you can't require accreditors to like everybody with whom they have dealings. Yes, and vice versa. Everyone has a staff. And the staff may have interactions. We had interactions with your staff this morning as we came in. Everyone has a staff. But that's intrinsic to the process. It's not the kind of bias that puts you into the arbitrary and unreasonable category. And there's, I mean, the record in this case is huge. It's so huge that we brought it in on an iPad. But there is plenty of evidence in this case that goes both ways in terms of MS me thought this of the ACCS staff. The ACC staff said this to her. It's rife with comments that are interpersonal in nature, but don't go to the type of thing that would take you to a bias finding with, I'll use capital B because I can't figure out how to explain that, other than to say it's usually conflict of interest, financial interest, and so forth. Well, this gets the courts awfully deep into the weeds to unearth the potential personality conflicts between MS me's and one of the accreditors. I mean, it gets us awfully deep down into the weeds. Agreed entirely. It does get you into the weeds, and it's a place that you shouldn't be. The straightforward and simple question is dictated by the law. The simple question is whether or not there's substantial evidence to support the result. And in this case, there is substantial evidence. Can I just give you a chance to just respond to the argument that, putting everything you've just said to one side, that the economic consequences of these decisions are so severe and that the hardship that can be incurred by a school that loses its accreditation is so substantial that that really does call for some kind of a fuller review by courts. What's your response to that? It's really just a policy argument, but I'd be interested to know how you respond. My response is thank goodness. And the reason for that is that the public policy interests, the economic consequences obviously deal with financial aid and federal financing of educational institutions. The purpose of the regulations, our client accredits 700 institutions a year. It's one of about 15 to 20 accreditors throughout the United States. The standards should be exercised by those with experience and judgment in the industry. And with all deference to you three, it is better off having it done by those with experience and judgment in the area as opposed to a federal judge who decided to take a foray, with all due respect, into the educational arena for three days during a bench trial and made credibility findings about one client versus the other client, called one was nonchalant and the other he made inferences in their favor. The consequences are severe because the public policy is so intense. So I actually look at that question and I say, thank goodness, but the federal courts should defer under something akin to Chevron deference, ERISA deference, and the deference of the courts that we talked about earlier. If you have no other questions, I'll turn it over to Mr. Skodra. Thank you very much. Good morning, and may it please the court. Michael Skodra here on behalf of the defendant as cross appellee. Very briefly, Your Honor, turning to the state law questions, the district court properly rejected plaintiff's state law issues in this case. And at the threshold, as an initial matter, the state court did so properly because such issues are simply not cognizable in a challenge to an adverse accreditation decision. In 20 U.S.C. 1099 B.F. in 1992, Congress created exclusive federal jurisdiction for any suit in which the school challenges the denial, withdrawal, or termination of accreditation. As the Seventh Circuit recognized in the Chicago school case in language later embraced by the Sixth Circuit in the Thomas Cooley case, when Congress did that, it follows naturally from Congress's decision that they did not intend to have federal courts deciding state law questions that the state courts themselves were statutorily prohibited from reaching. More than that, it would create discontinuity nationally, which is... The grant of jurisdiction would mean something. I mean, why throw it out jurisdictionally? Because there's several of the state law claims, the idea that there's a breach of contract action when there's no contract, and that there's tortious interference when somebody makes a decision that they're empowered under law to make. Those are not substantial claims. I would agree, Your Honor. And that is absolutely an alternative ground on which to affirm the judgment here following the district court's reasoning. The question of common law due process, why not just confront it on the merits and talk about all the process that was afforded? I'm wondering if the jurisdictional issue that you're pressing isn't a bit more treacherous than simply disposing other claims on the merits. Sure. So let me briefly turn to that. I'll just conclude on the preemption to note that the Sixth and the Seventh Circuits have both embraced this limit on federal jurisdiction, that state law claims are not cognizable as part of these suits. Beyond that, I would just note that while... They are cognizable. It's sort of an odd duck because the Higher Education Act doesn't afford a private right of action. Right. And so you say, well, it shouldn't be in court. But on the other hand, there is a jurisdictional grant. Right. I haven't seen this too often where there's no... Right. No private cause of action under the organic statute. Right. And yet there is a jurisdictional grant. And I think maybe the answer is it may not be jurisdictionally wrong, but common law due process, it's not real terra firma... Right. ...for a federal court to play on its feet. Right. I would note that looking at the history of the common law due process cases in this context, they long predate Congress's decision in 92 to grant exclusive jurisdiction to the federal courts in the 1099-F statute. And so there was a pre-existing federal right, consistent with the idea that in granting that exclusive jurisdiction, the Congress didn't contemplate that there would be these ancillary or supplemental state claims making their way into the mix as well. And I would just, on a very brief final note, I would add that the college loan court, a decision by this court that's relied upon by the plaintiffs for the proposition that this court has already held to the contrary, that this court has already split with the Sixth and the Seventh Circuits, that's simply incorrect. The college loan court case dealt with a very different part of the Higher Education Act. It was the federal family education loan program. It was two lenders, one suing the other. There was no exclusive grant of federal jurisdiction. And to your Honor's point, the court there frankly was concerned, openly concerned, that in the absence of a state law claim and the absence of a private cause of action under the HEA, there would be no remedy for an aggrieved lender under the circumstances presented in that case. So I think that case is easily set to one side. I know you want to move on to the merits of the state law claim, but just, I also find this part of the case the most perplexing. Because if we're applying, so the common law due process, that's federal common law. It is, Your Honor. And there has to be a reason why federal courts get to make federal common law. And isn't that usually that state law won't do? There's some reason why we have to apply federal common law and not look to state law. So once we've decided we're applying federal common law, doesn't it sort of follow that the state law is preemptive or there's no cause of action under state law? I'm just having trouble finding the space between those two things. I absolutely agree, Your Honor. And quite frankly, this case illustrates it in looking at the merits of the two state law claims. There isn't a contract here. These are standards. Had these been enacted by the Department of Education itself rather than its surrogate as occurred here, there'd be no question that a regulation isn't a contract. Not only can it be changed unilaterally by the Department of Education. To follow up on Judge Harris's question, I find your case on the merits to be pretty strong. But if we go with a jurisdictional ruling, I'm a little nervous about what that does with the jurisdictional grant. But I'm also nervous about the fact that I'm not sure if we go with a jurisdictional ruling, whether we leave accreditation agencies total free reign to visit the kind of consequences that Judge Harris is talking about. Because sometimes they can get very ideologically driven and sometimes they can run off the rails. Not here. But there's obviously, it seems to me, a balance that's struck by the standard of review. And the standard of review adopted in that Cooley decision, the Sixth Circuit decision, is a very well done decision. And doesn't the standard of review strike the kind of balance that Congress wanted by the arbitrary and capricious standard? And without the need to go with a more sweeping jurisdictional pronouncement, I mean, the standard of review would seem to me to preserve the balance and give you the deference you deserve and not have every denial of accreditation come for a de novo trial in federal court. But if you keep pushing it, you get to a point where the accreditation agencies have no oversight at all. And they can do some ideologically and other driven things. So you want to preserve a balance here, don't you? Absolutely, Your Honor. In fact, I would say that, and to be clear, we're not suggesting that there isn't jurisdiction over the common law due process. Indeed, to Your Honor's point, that is the cause of action. And that cause of action, by its nature, strikes precisely the balance that Your Honor has identified. The concern we had, and what I think drove the Sixth Circuit and the Seventh Circuit to reject, to essentially find preemption over related state law causes of action like breach of contract, tortious interference, those claims, by dint of state law, may not strike that same balance. Those claims are a poor fit, as this case beautifully illustrates, without a contract, with obvious legal justification for purposes of tortious interference. So our point would only be that this court, one way to affirm would be simply to follow the Sixth and the Seventh and to say the independent state law claims, unlike the properly balanced federal claim, are not properly raised in a 1099-F case like this. That was the only right. Unless the court has... Thank you very much, Your Honor. Thank you, Your Honor. May it please the court, my name is Matthew Hoppeck. I represent Professional Massage Training Center. I'd like to start with the question about the economic impact of decisions by accreditation agencies raised by Judge Harris. There's no doubting that when a school loses its accreditation, it's kaput, especially if its students, for the majority, rely on federal student aid. Not only do they lose their Title IV aid, they can't get it back for at least a year, and most schools in those situations have to go out of business. The problem here is when you peel back the curtain and you find evidence of stark bias, that, as Judge O'Grady found, has so clearly infected the actual record, so that the commissioners didn't even get to look at what the record ought to have been, how do you do substantial evidence review? There certainly are economic consequences to the denial of education. There's a policy tension here because the accreditation does... I mean, it does give the public confidence that professionals have come out of training with certain sets of standards. And it also is the policy on... There are policies on both sides, but there's also the policy on the other side that federal funds are involved, and you want to not only be prudent with the federal fisc, and not have it go to places that aren't giving students what they pay for, but it's also unfair to students to have them sign up at institutions that are simply substandard. That's an excellent point, and that's what's so confounding about this case, because nobody disputes that this is an excellent school. Its students were graduating, getting jobs, and paying off their loans. Even ACCSC in its final appeals decision said, we don't dispute that your metrics are excellent. You are at the top of all of our schools. You still lose your accreditation because of this inadequate management standards. But you know in advance, and it's not for this school, but dealing with any of the similar accreditation agencies, you know in advance when you apply what the general standards are. Here you've had several years to try and comply with the standards. It's not that you don't know the goals that you need to obtain in order to arrive at that point of getting accreditation. So it's a choice that the school makes. Maybe a stark choice that you can't succeed in certain economic strata if you don't have the federal aid. But you could still have a school without federal aid. It just might be at a different level. But you know when you go into the process that that's what you have to do. The court in this case ruled, as a matter of fact, granted an injunction concluding that if the school didn't get one, it was going to do a lot of business. But more to your point, which is a good one, you know in advance what the standards are, and twice this school was granted accreditation for having an adequate manager. We see this in administrative cases all the time where an agency will grant a visa, for example, to the same beneficiary three or four times, and then say the fifth time, you've never been eligible. That's essentially what they've done here. They've said, you don't have an adequate manager despite Juliet Mee, who started your school, has always run the school, and is still there. I want to get to one of the first questions Judge Wilkinson asked, which I think would trouble any judiciary. If we were opening the doors to every accreditation case becoming a de novo trial, what's important in this case, if you look at the record, is that ACCSC welcomed this process. They served discovery requests first. They participated in a trial, and nobody objected to Judge O'Grady conducting a trial, letting witnesses testify, hiring experts. So I don't think this is the right vehicle for the court to rule that the process was inadequate because ACCSC asked for this process, as did we. The second point is... The question is whether the accrediting agency followed due process. Was there a denial of due process on the part of the agency? I think we can limit the holding in this case to this. If a plaintiff pleads bias, if they plead that they have sufficient facts, Rule 11 acts as a check, they plead that bias has so infected either the outcome or the record, then there's no reason the court shouldn't be able to allow the parties to conduct discovery into bias. Otherwise, how does the court ever figure out if the staff are pulling the strings behind... which essentially is what this record showed. The difficulty is the finding of bias can bleed into the accreditors having a negative view of the educational program of the institution. I agree completely, and that's really what the trial evidence here showed. Commissioner Alan Sharp testified that the commission only talked about the school's library. But if you look at the written decision of the commission, it talks about all these other issues that we know from discovery and from their e-mails. The staff wrote that decision, and the staff came up with those reasons. Now, the school comes to court and says, we think this decision isn't supported by substantial evidence. But again, I ask, how do you do substantial evidence review when the agency didn't even issue that opinion? It's like a court having a court clerk. You got written opinions from both the independent review board and the initial panel? We did, but the process showed that the staff wrote those opinions. The commissioners didn't even come up with the reasons for the opinions. So again, the question is... and not only that, the commissioners weren't shown the entire record. At least two binders of documents were given to staff members that had been requested by the commission. A staff member took those to her house and didn't show them to the commission. So a Senate staff member writes a committee report, and the senators don't... you say that's biased, because the staff wrote the committee report? That's not biased. And the senators didn't look at it? It allows bias to creep into the judgment. And the Senate is not a judiciary like the court is. It would be like the court allowing its law clerks to write an opinion. Essentially, it would be like a law clerk coming to the court with half of the record and saying, Your Honor, I don't think... here's half of the record. I don't think the plaintiff has met her burden. Isn't it... I should try to follow your analogy, but like a court, right, didn't this agency have procedures for getting documents? You were supposed to submit them by email, and that's how they would get them? I mean, isn't it more like someone on a corner hands one of my law clerks a case and says, hey, show this to your judge,  That's what it seems more like to me, right? There was a formal process for getting documents to the agency, and this binder thing was outside that process. It wasn't, because in the team report that said, We're coming to your school, it said, Prepare records for the team to look at. The school prepared two binders for the team to look at, and the team took them with them. It was outside the normal process, but ACCSC's witness, Sean Foreman, testified, We do accept paper, and when we get paper, we scan it. You knew you could submit those electronically, and in fact, there was a procedure in place to submit things electronically. I've been through these accreditations in different organizations and different educational institutions, and they do run on a fairly standard set of protocols, and I don't understand here. This process lasted about 18 months, and that's a long time for an accreditation process. Now, you can say, Well, that's the commission's delay, except I'm not sure it was, because they gave you, you requested extensions of time. As I understand it, they granted those extensions of time. There were two different site visits. There was a probation decision. They were put on probation several times. There were repeated requests for materials, particularly with respect to faculty backgrounds and the number of years that the faculty had, that had actually, the number of years the faculty had had in the field before it started talking in the classrooms, and it just seemed to me, by and large, that there was a real, there was a great deal of process here, and the problem is that the process uncovered multiple problems in every facet of things. It uncovered problems with the Learning Resource Center. It uncovered problems with faculty backgrounds. It uncovered problems with continuity of administration. I haven't seen, I mean, those are three basic building blocks of education. Do you have the resources to teach the students what it is they're supposed to be taught? Does the faculty have the experience in the field to bring to bear in the classroom? Is there continuity of administration that would afford some sort of stability? And yet, in all of these, identifiable problems are pointed to, and it doesn't, I don't understand how that adds up to arbitrary and capricious behavior. I'm not, I don't, I'm not crazy about administrative agencies. I know they can be overbearing, but it gets down to the specifics here, and I don't understand the arbitrary and capricious, I don't understand how you lean that. I appreciate, the court's point is well taken. I think it's important to understand how the process works at this agency in particular. 18 months of process is conducted by staff alone. The only people coming out to the school and examining the library and the, and so if you have a staff member who doesn't like this school owner and wants to see to it that they lose their accreditation, the standards make it possible that the staff can just keep going to the school and coming back and saying, still don't have a good library. Just so I understand your, the kind of the bias allegation you're making, is the allegation that the staff sort of before this process started, you know that they had some kind of pre-existing issue with the owner of this school, or is it that during the course of the process they came to the view that this school shouldn't be accredited and maybe also to the view that the owner irritated them? The court didn't make a finding about bias prior to the process. Doesn't it really matter which it is? Because it, I'm not certain it does. Let's say in your first submission you didn't use Times New Roman and this staff member will only read Times New Roman and says, I'm putting this school out. I don't think it matters if the staff member already didn't like the school. The court made a finding of fact. Bias findings are findings of fact reviewed for clear error. The court found that numerous executive staff members at ACCSC embedded negative comments about the owner into the, embedded false statements into the electronic record that were then given to the commissioners. Which are the false statements that you've identified? Some of them were in comments in the PDFs that were given to the commissioners. One of them was about faculty verification. The emails back and forth between Sean Forman and Chris Lambert. Sean Forman said, it looks like they verified their faculty. And Chris Lambert wrote back and said, put it in anyway. This is the, that's exactly what Sean Forman's email says. Put it in anyway. No. Chris Lambert writes back and says, keep it, and the quote is, this is the management issue we're building around. And what does the first email say? It said, I'm not certain how we can, I can't remember verbatim. But it looks like they're verifying their faculty. It says to the, I'll tell you that the district court made that finding. That, and I can, I can cite that, I don't have the page in front of me. I would be glad to file a 28-J letter with the page number. Not necessary. How could they have verified the faculty when the, where the, they request, let us have the background on the faculty members. And then, what I understand, is that the PMTC produces three blank forms. Okay? There's a reference release form, and an employment reference form, and a form for noting phone verification. Alright. Blank forms in response to requests for, for faculty backgrounds don't really make the case. The district court ruled on it, as a matter of fact. The district court said, Did they submit the blank forms when they were requested, when they requested verification of faculty credentials? Parts of the forms were blank in an instance when the employer had gone out of business. So the school had tried to contact that employer and it was no longer in business. And Judge O'Grady ruled the accreditation agency can't use that kind of an attempt to say you didn't verify your faculty. In fact, those faculty are still at the school. And that's what O'Grady was so worried about, is the record didn't show that they didn't attempt to verify the faculty. In fact, the record showed that some of the old employers had gone out of business. The other point on this issue, the district court found that the faculty verification had been waived by ACCSC. They didn't submit any conclusions, suggestions of fact or conclusions of law prior to trial. And so the district court didn't really even rule on faculty verification, finding it had been waived after trial. A good part of the dialogue with opposing counsel dealt with the standard of review in these types of cases. The level of discretion, which I think everyone agrees is fairly high. The amount of deference, I mean it's paid to the accrediting agency by a reviewing court, is fairly high. Probably one of the highest levels of deference in judicial review. As I understand your argument so far, you haven't spoken to that directly except Gleen so far, that you think there's an exception to whatever level of deference there is in cases of bias. Have I capsulized your argument? You have. In every case we've read, in every case both sides have said, if there's bias in the process, that's a problem. I don't know of a case or any court that said bias can be overlooked or that it's not significant to the process. I think courts have identified three standards. Is the opposing counsel incorrect in reciting that there were no allegations of bias on behalf of the actual decision makers? Yes. The decision makers weren't biased. The problem that the district court identified is that they didn't collect the record themselves. They were given it to them by the staff. And so the bias bleeds into the system by preparing a record that's incomplete, by preparing these PDF documents with negative comments, some of which were deleted and didn't end up in discovery, by facilitating the meetings. Staff actually sit in on these meetings and facilitate the discussion of the commissioners, and by writing the decisions themselves. Again, the commission testified, Alan Sharp testified, the only thing we talked about was the library. How on earth is this court reviewing a decision about faculty verification and all these other things if that was the commission's decision? Every agency operates with staff. And I don't see how an agency goes without staff. The problem I have is if this is staff bias, we're overturning the whole process because in every instance where there is staff and it has qualms about the institution and it has reservations about the institution and it submits a negative report, then we're going to have a trial and we're going to have allegations of staff bias. I agree. But every institution, including this one, has checks. So the staff can't just issue the opinion, write it, and send it out. But if you look at the record, and as Judge O'Grady found, the staff wrote the opinion and sent it out and no commissioner even reviewed it. And then the ACCSC attorney wrote the appeal decision and sent it out and no commissioner reviewed it. So again, if the staff aren't checked and the staff harbor a palpable bias as the trial court found here, bias can bleed in. It's not going to happen here, obviously, because your law clerks don't issue your decisions and sign your name. But that's essentially what happened at ACCSC. And the reason that a fuller, more fulsome trial needed to happen. But the problems they found with the institution are backed by facts. They're backed by specifics. The district court found that they weren't. The question is whether the district court ought to be conducting a de novo trial in the first place or whether it should have gone with the administrative record. The problem is it conducted a trial, it supplemented the record. There were all kinds of additions brought to it through discovery and testimony. And then it was remedially aggressive because not only was a substantial amount awarded in damages, but the district court accredited the school. When we say it's backed by facts, I think it's significant to understand what that means. The facts and the fact finder at ACCSC  Both commissioners we deposed testified we rely on the reports they prepare as the facts. So if Lisa Miles, who prepares both reports, testifies in her deposition she doesn't like the school or its owner. What agency doesn't rely on an investigator to find facts? Take the National Labor Relations Board. They have an investigator out in the field who investigates the conduct of an election or who investigates management conduct with respect to a union, for example. Or you have a safety commissioner from the Occupational Safety and Health Board who goes out into the field and examines safety practices in a particular factory or plant. That person, their staff, they make findings based on on-site visits. They report back to the commission and the commission makes a decision. But there are... To call this process in some way incorrect is troubling to me because every time you would have an agency which uses staff to make on-site visits and the staff reports from an on-site visit in a negative way, if that's bias and that's incorruptible, I mean, that's a tsunami in terms of administrative law. I see that I'm out of time. May I answer your question? I always give you the last word. Thank you. The court's point is important, but what is missing here that is not the case of the NLRB or this court is there are no checks in place on these staff and every witness testified that these staff members sit into decisions in the meetings, write the decisions, write the appellate decision, and if those staff members want to see the school close, as you can see they're celebrating when the school loses its accreditation, writing it's a slam dunk. It's a significant problem and it's not a problem that's going to happen in every case or even most cases. We've never seen a district court make a finding of fact that actual bias existed. It's been addressed in a number of cases, but it's never happened. So I'm not certain it's a tsunami or a wave of cases that are going to come, but this is, it's important. Thank you, Your Honor. With regard to the two agencies that Judge Wilkinson mentioned, I guess would be there were, would be some members of Congress amongst other members of the public who would disagree that there are checks and balances at those agencies. I think there ought to be. Okay, thank you, Your Honor. Refine the speaker. Your Honors, we ran overtime earlier, so I'll be very brief and then answer any questions. The key point I think is that, that I just want to bring you back to is notice and an opportunity to be heard. The PMTC, with regard to the decision makers who we just heard were not biased, actually in the final appeal, if you look at the record and it's in the briefs, undisputed, in the final appeal when the three ultimately make the decision that should be reviewed, there's a lawyer there representing the PMTC, Ms. Mee is there. They have the opportunity to do whatever they want. They can submit whatever evidence they want, do whatever they want. If they wanted to argue bias, they could have argued it then. They could have, they could do whatever they want. And if they wanted to make a proffer of evidence that wasn't going to be admitted, they could have done it then too. The second thing I just want to clarify is when you talk about staff visits going out to the campuses, the record will show that it's not only staff, it's also volunteers. So it's not just staff, it's independent volunteers. There's a couple of other points I could make, but I would answer any questions you have and then I'll sit down. Yeah, I remember visiting some law schools, sitting on Moot Court, and they were being visited by the accreditors. And they were, you know, they didn't like it. And, you know, they said, gosh, I'd rather the auditors come here than the accreditors. But, you know, they got the documents together and everything, and at the end of the day, the school was accredited as the vast majority are. And the schools, in retrospect, did feel, not at the time when they were going through it, but often in retrospect, that it was a very worthwhile process because it made them get their act together. And it reinforced a process of reflection and self-examination, and it set standards that they wanted to meet and improve the school and everything. I mean, sometimes quality controls are not much fun, but, you know, they serve their purposes by and large, even though in particular instances they are subject to abuse. But at any rate... We hate sight checking, but we do it anyway. Thank you for letting me ramble on. Thank you, Your Honor. In that way, I appreciate it. We will come down and re-counsel, and we move into our next case.
judges: J. Harvie Wilkinson III, G. Steven Agee, Pamela A. Harris